Good morning. Good afternoon, Your Honors. May it please the Court, John Yang on behalf of Respondent DeWarden, a respondent appellant in this case. Now, before I proceed, because this is a cross-appeal, counsel and I were confused as to how to proceed, and we consulted with each other. If the Court has no preference, I'll go first, she'll follow, and then I'll rebut, and then she can have another rebuttal. Whatever. Okay. Thank you, Your Honors. Let's address the issues. We'll sort it out. Okay. All right. Your Honor, we appealed the district court's judgment in this case because we agree with the magistrate judge that the record does not support a finding that the prosecutor presented perjury in this case. Or a false testament. It doesn't have to rise to the level of perjury, does it? Your Honor, I don't – according to United States v. Augers, which surveys the cases on the subject, that the United States Supreme Court used the word perjury. The magistrate judge certainly uses the word perjury and set that as a standard. And if we look at all the cases, it's what makes these type of cases or what makes the prosecutor's conduct insidious. It's because there was willful deceit against the court, the jury. It's a subversion of justice. So that's why I emphasize on the word perjury. I'm sorry. What he testified to was material. There's no doubt about that. I'm sorry. Was or wasn't? It was material. Is that not correct? Your Honor, I don't believe so. And this is why. Because from the get-go, from the outset, the opening statements by counsel, defense counsel had told the jury that the sole issue in this case was identity. It was identity. It was not regarding any other elements of the crime, such as the nature of the device used. And he certainly confirmed that opening statement with his closing arguments, basically conceding that a molotov cocktail had been used, a destructive device had been used, basically. And so in light of that, in light of the posture of the case as it is, the nature of the device then wouldn't be material to the outcome of the proceeding, or wouldn't be material to the case at all. And that's precisely. Counsel. Counsel, Judge Gould with a question. If someone threw a rag soaked in gasoline and lit, but not enclosed, just a gasoline filled rag that was started on fire, and they threw that against the building. Am I right? That would not be an explosive device. No, it wouldn't be. Even though it might contribute to the arson. So then why isn't it material whether the bottle had gasoline in it or not? Because it was not a. We believe it is not because it is not a point in contention. It is from the outset by defense counsel's opening statement. It is not a point in contention. The defense counsel's theory at the beginning of trial was that somebody did throw a destructive device, following the definition of the statute, and that the only question was that his client didn't do it. That's his defense. And so in that sense, Your Honor, that rendered this particular issue of ordinarily it would be of great consequence. But in this case, it became of minor consequence, such that the prosecutor in this case, when he was questioning this particular inspector, he was going through this chain of custody type of line of questioning, which is usually something that prosecutors try to get it over with before getting to the more juicy and meaty part of the case. And that's because of the minor importance of the issue. I think that's what made that that was what had contributed to what at best is sloppy questioning by the prosecutor. But it's not a knowing presentation of perjury. Were there stipulations of fact that would have narrowed the elements that the jury had to consider? Not that I know of, Your Honor. Not that I know of. But certainly, the posture of the case has been significantly limited, or the extent of what the jury had to look at had been significantly limited. Not to the extent of as taking it out of the question, but certainly rendering it of very minor importance, that particular issue. And so as I understand the facts of this crime scene, the bottle, the plastic bottle was the fire started up against the house. Is that correct? Yeah. Okay. So and there was evidence from other neighbors that saw at least one or two maybe, saw him throw, the person throw something that looked like it was a sack or something like that. And it was lighted. And it was lit. And the bottle was found proximate to the area where the fire started. That's correct. Okay. Now, the rag that featured in all of this was found 10 feet away. Is that correct? That's the number that I remember. Okay. And nobody's disputing that the rag had gasoline on it. That's correct. But was there any evidence about how the rag came to be 10 feet away from the site of the fire? I don't I don't remember any. But certainly if there is an explosion and if the explosion occurs through the mouth of the bottle, certainly two objects will become separate. I see. So it may have been blown right back onto the driveway. Sure. Sure. Sure. So it's conceivable that the that is it I'm going to the materiality issue. Sure. If the rag were the thing that were lit, there was nothing in the bottle. It was just to give it heft so that if he threw it, it got as far as he wanted it to go. There's no gasoline in the bottle other than it was just the rag stuck into the top of the you know, like we have this water bottle here stuck. And otherwise the bottle is empty and the rag hits the side of the house. And that causes something to burst. I may be answering my own question. Is that why would it blow it out? That's what I've been. There had to be something. It was the testimony by the witnesses was that there was an explosion. It wasn't. They heard a bang. They heard a bang. And I think there was somebody who used the word explosion. And so then fire erupted. So we have really good, solid, undisputed testimony as to the what happened with the individual who threw it. The description of the object, the description of what happened when the object landed and, you know, all the physical occurrences. And those were undisputed. And they were undisputed precisely because counsel was proceeding with the singular defense theory that it was mistaken identity. And that's why he could very well present to the laboratory report to the jury to rebut any inaccuracies by Inspector Freed on this issue. He did not. And the record is clear that counsel had this in his possession when it was turned over to him during discovery. And the district court had made explicit findings that this was turned over to him during discovery. And certainly that's based on the fact that the state habeas corpus petition that was filed, I think that's supposed to be part of the record, contains a declaration from counsel, defense counsel, that this particular laboratory report was turned over to him during pretrial discovery. And he didn't present it. And it's consistent with everything else that we've been saying. This issue had been basically rendered inconsequential with counsel's selection of his defense theory right from the outset of the trial. And that's why the record as it can be read, I think with a reading that's most generous to the Petitioner, is not that the prosecutor in this case engaged in anything, any action as malicious or insidious. Rather, it at best or at worst is sloppy questioning on a subject matter that is of minor consequence. And that's why the prosecutor's conduct really does not fit the class of cases that traditionally have been viewed by the Supreme Court and by this Court as the type of reprehensible prosecutorial misconduct that violates due process. Kennedy. Well, I think we have your point. You said you wanted to save some time, so. Oh, yes, Your Honor. And if I can just look at my notes real quick. There's one more point that I need to make before I reserve time. One other thing regarding the point that defense counsel knew about the laboratory reports is that if we survey the cases on this subject matter of prosecutorial misconduct and presentation of false evidence, we look at these cases and we find out that in those type of cases, the defense counsel did not know about the falsity, did not know about the falsity during trial. It was only after trial when new revelations came out that defense counsel then was surprised at the situation and petitioner raises it in an appeal or in habeas corpus. And it's once again an insidious part of the prosecutor's conduct. The prosecutor in those cases actually did not even turn over material evidence to the defense such that the defense would be able to use any of this evidence turned over to rebut whatever falsity that may arise during a trial. And so this case just doesn't fit into any of the mold of what we're talking about in the Pooh area. So with that, I'll reserve time. Roberts. Good afternoon. Tracy Dressner for Petitioner Robert Barrett. It's simply not the case that anything that a defense attorney says relieves the prosecutor of its burden of proof, of proving the elements beyond a reasonable doubt. In this case, Mr. Barrett was charged with the use of a destructive device. The destructive device statute, which I cited in my opening brief at page 18, requires any projectile containing any explosive or incendiary material or other chemical substance, and specifically requires a breakable container which contains a flammable liquid, blah, blah, blah. And what we know in this case is that, which the jury never learned, was that the Sprite bottle that their fire investigator claimed to be the fire bomb, in fact, contained no ignitable fluid. Now, neither the magistrate judge nor the district judge found any fault with that. The district court really focused on the at least it didn't find there was a material falsity there. Well, I don't know that the Court ever addressed it, but in fact, there is – it is – It is a footnote in her opinion. The magistrate judge said that the testimony about the residue, the question that was posed was whether it had been subjected to any kind of chemical analysis or anything to determine if it had been softened by the presence of gasoline. The magistrate judge said, well, that's – the answer to that was true. It wasn't. It wasn't submitted for that purpose, tested for that purpose. And then he goes on and says, so you wouldn't – the question, you wouldn't know if it had been kept in there, that is, a gas. No. So that arguably is misleading. But I'm just – I'm trying to understand. Well, there's two parts. What are we supposed to do with this ambiguity in the record when the district court doesn't make a finding of falsity? Well, if the district court doesn't make a finding, it doesn't mean that it's not false. We're here on independent review. No, I thought we were here on clear error review. No, we're here on independent review. These issues were presented on habeas in state court, and there was never – they were summarily denied at every step of the way. And so the – No, I thought we were on clear error reviewing the findings of the district court. No, I don't – no. You don't think so? So it's just a no. We can just ignore what Judge Morrow said. She made no – yes. Okay. This is an independent review of the habeas finding, of the grant or denial of the habeas. And the falsity was twofold. One was saying that the bottle had never been out of possession of the fire investigator, which we know had to have been out of his possession at some point because it was at the crime lab, the sheriff's crime lab, which is different than the Torrance Fire Department. And the second is the overall falsity, which is that he testified repeatedly that this was a fire bomb consisting of the Sprite bottle and the rag. The falsity is the prosecutor and the fire investigator knew. And they had proof. It's right here in the report that there was no flammable, ignitable fluid found in the Sprite bottle. And that's what the defense knew, too, because they had the same report. That doesn't absolve the prosecution of its duty not to present false testimony. The false testimony is it could not be. Well, counsel, I take the point. But the point that troubles me about this case is you're relying on, the district court was relying on, excerpts of testimony, snippets of testimony, building a case of false presentation of evidence. Now, the first colloquy has to do with, as counsel said, reads like standard chain of custody. You know, you've got these two cans, each of which have one has the bottle, one has the rag in it. And you handed those to me. And other than that, did your officer, you have possession of these items? Yes. Okay. So that doesn't, I mean, that could be, if you ascribe nefarious motivation to the prosecutor, but that hardly seems like a clear case of false testimony, but arguably. And then the question about the, on cross, which is a cross examination. The other was direct. The cross is, did you expose the bottle to any kind of chemical analysis or anything to determine if it had been softened by the presence of gasoline? Now, counsel presumably has the lab report that says it's been tested by the L.A. Sheriff's Department. Counsel, if he didn't pursue the first line of questioning, certainly would have known, had reason to know, that it had been tested and there was no residue in it. But he frames the question in terms of softening of the presence. Now, you're asking us to say that defense counsel can ask a question like that, and the witness can give a truthful answer, and we're supposed to find that the prosecutor knowingly presented false testimony. That's a leap that I find very difficult to make. It's actually not that leap. It's actually his testimony is at, on page 231 of his testimony, 232 of his testimony, and 252 of his testimony. This is. Of the fire inspector, that this was a firebomb. Yeah. Consisting of the Sprite bottle and the rag, and that is false. We know from the crime lab report that the bottle did not contain ignitable fluid. It could not have been the firebomb. It's simply false. And so the prosecution's failure, the prosecution didn't have to ask a direct question. Was there gas, was this tested for gasoline? What you, the take-home testimony from the fire inspector was that this was a firebomb consisting of the Sprite bottle and the rag, and the rag being ignited within. And that is false. There was no gasoline in that Sprite bottle. Therefore. No residue of gasoline. There was no ignitable fluid found in that bottle. That's conclusive that there never was? It's, what's the proof that there was? Well, wait a minute. You're saying it's false. It's false. It could not, based on their crime, on their lab testing, that Sprite bottle could not have been the firebomb. That was false. And it was, and it was exacerbated by his testimony that it wasn't out of their possession, knowing full well that it in fact had been out of their possession, not just out of their possession, but had been tested and found not to contain gasoline. And they've conspired to put this testimony on, having turned over the report, knowing that they could blow themselves up with one good question from counsel. Nobody, it doesn't, bad motive doesn't have to be there. I'm not talking about bad motive. I'm talking about credibility that this was knowingly false testimony. The prosecutor doesn't have to have bad motive. The prosecutor could have simply forgotten it. But the fact is that the testimony that this was a firebomb was false, based on the crime lab slip that was not presented and bolstered by the testimony that the bottle had never been out of the possession of the fire inspector. Counsel, there's something missing here. What the fact would be is that there is no proof right now that there was gasoline or substance in the bottle. That's all. That's right. It could have been. But there could have been, but the prosecution has the burden of proving beyond a reasonable doubt that there was a breakable container that contained gasoline or that contained an ignitable flame. And there's simply an absence of that other than the fire inspector testifying that it was a firebomb because he put it all together and said it was a firebomb without ever mentioning that it had been tested and, in fact, there was no gasoline in there. I mean, whether you could parse that down word for word and point to the exact falsity is one thing. What was the impression that was left? A prosecutor has tested the bottle, found that it contains no ignitable fluid. What would be the duty, any duty on the defendant and his attorney at that time to say, well, look, the lab report shows that it was out of your custody and that we can't now find any gasoline in the bottle? And this Court actually has certified the IEC claim for this issue. And I, frankly, assumed it was so clear that this was false that and that the prejudice component was the issue that I didn't bother briefing that because the prejudice problem was going to be absolutely the same. But, yes, why counsel didn't do it, who knows. Counsel had this idea that he was going to contest who the person was, not how it was done. But that doesn't mean that you disregard the prosecution's burden of proof that they actually have to prove beyond a reasonable doubt that the Sprite bottle was part of this. And they did if nobody knew that there was no gas in that bottle. Now, who we want to lay that fault to, it seems pretty clear to me it's the prosecutor's duty. And, again, I'm not ascribing any bad motive to him. But the fact, and I doubt that the prosecutor was ever thinking about the crime lapse when he asked the question about the possession. But when you add that question with the testimony about the firebomb, the take-home message was this was, that the inspector is absolutely right, this was a complete kit firebomb, we referred to it as a firebomb and a Molotov cocktail throughout the trial, and yet the jury who had to determine whether it was a destructive device never learned that the bottle had been tested and not found ignitable fluid. Now, whose fault is that, the prosecutor or defense attorney? I think they're both responsible, but the prosecutor, as the government entity in charge with proof beyond reasonable doubt, is the person who should have made sure that the testimony of his key witness did not come off as at best misleading and, in my view, false, that that sprite bottle was part of the firebomb. As to materiality, I think that goes without saying, it's material. You need to prove that there was ignitable fluid in that bottle. In the absence of a bottle, just the lit rag, there's no destructive device. Along with that is the issue of sort of the fairness of the trial going to the arson charge. Now, the issue with the arson, clearly there was an arson that occurred, and that's not in dispute. There was an issue as to who committed the arson. And to the extent that, one, you have a repeated use of the phrase Molotov cocktail and firebombing throughout it, sort of a prejudicial slant, there's that aspect of whether Mr. Barrett received a fair trial, because throwing a lit rag is different than throwing a destructive device in terms of sort of one's sensibility of the actions that were taken that night. Well, there was testimony that there was an explosion. Actually, what they said what there was was the, quote, small bang, and that was it, small bang by one of the witnesses. Small bang is quite different than an explosion. And, in fact, the bottle wasn't exploded. The bottle had melted. The bottle was found in a planter. You know, plant bottle, empty soda bottles are often in someone's lawn, planters. We don't know what the neighborhood was like. The witnesses who saw something thrown saw something that looked like a paper bag, not a bottle, a green Sprite bottle. So there's certainly evidence suggesting that the bottle had absolutely nothing to do with this case, that it's a red herring or a green herring. How did it get burned? I want to hear. Well, there was a fire. How did it get burned? It was fire. It was 10 feet away from the... No, the fire started from the ground up. Oh, I see. And it wasn't burned. It was melting. I mean, it could have been heat, too. We also don't know in terms of how the rag was found. I was afraid to believe it was melted. I believe it was melted. I'm not 100% clear on that. Was that we don't know at what point when the bottle was found, when the rag was found. There were a lot of people. The teenagers were there putting out the fire. The family was running out. We don't know if the stuff was actually found in the condition it was in. But in terms of the fairness of the trial, the fire inspector was a key witness. He was the only one who said certain things about what the mother supposedly said. The mother testified and said that she didn't say that. So there were some issues that go to his credibility that would have come into play had this false testimony been brought out. And in the absence of all that, the testimony actually implicating Mr. Barrett was far from overwhelming. This was a truck identification. The prosecution's case was these people saw what they believed to be Mr. Barrett's truck. Mr. Barrett was then found in the truck later. Therefore, he must have been the person they saw. There was no eyewitness identification. It was his truck. It was his truck. But the question is whether that was actually the truck that those kids saw, because the description that the kids gave was very different than what the truck, in fact, really was. They at trial testify it was the same truck. But, of course, by that point, they had seen Mr. Barrett's truck. He was arrested there back at the scene. But in the police, it was a yellow truck. It was apparently an old beat-up yellow primered truck with chrome bumpers. And what the three teenage witnesses told the police that night, they described it as a primered gray-colored truck, a white primer and a blue prime stripe truck, a truck with a blue top and a blue primer. Nobody mentioned yellow. Nobody mentioned the chrome bumpers. Okay. I think we have the details here over time. So my bottom point was that this was not an overwhelming case and that the failure to elicit the accurate testimony from the fire inspector permeated throughout the trial. Okay. Thank you. Your Honor, something that I haven't addressed is the question, the particular standard to be applied in the prejudice analysis, and that is reasonable likelihood that testimony could have affected the judgment of the jury. There is no such reasonable likelihood in this case because the defense counsel conceded the issue, conceded that it was a destructive device. It was a destructive device within the meaning of the statute. That's the first reason why there's no prejudice. The second is, contrary to what counsel has said, we believe that there is overwhelming evidence. First of all, it wasn't false that the testimony wasn't false that the spray bottle had gasoline on it, because Inspector Freed testified that when he was at the scene collecting evidence, he picked up the bottle and it smelled of gasoline. So that was evidence that rendered it his claim, that supported his claim that this was a Molotov cocktail. But other than that, I don't think a single rag, when you light it up and you throw it, it's going to create a bang. The bang was heard from across the street, neighbors watching. That's an explosion. That's an explosion. And with the presence of the rag and the bottle and the explosion, you put the piece together, it's a Molotov cocktail. It's overwhelming evidence in our view. And one thing about Inspector Freed's testimony, and like we – I have stated earlier, it at worst was sloppy questioning. In fact, the magistrate judge didn't deny that the testimony could be inaccurate. What the magistrate judge found was that it was not perjury. And really, for something to be perjury, there has to be a direct question that needs to be asked. And we stated that in our brief. Was this bottle at some point in time turned over to the laboratory for analysis? That question was not asked. Instead, it was just this roundabout way of asking the chain of custody question, quote, other than that, did you or your office have possession of those items? Now, when Inspector Freed said yes, I'm sure that if the prosecutor had asked, well, didn't you turn that over to the laboratory for analysis, he would have – You're not adding stuff that isn't in your brief. Well, Your Honor, and I'm just pointing out the fact that innocent misrecollection, that's a jury instruction. That, as instructed every day, that just because there is – there are discrepancy in testimony, it could be an innocent misrecollection. Therefore, we can't find that to be a lie, just in and of itself. We have to look at the circumstances. And one more thing, and it's that the bottle, the district court judge had found that in the case of the gasoline. He found that the gasoline could have easily evaporated from the bottle. So that's all I wanted to add. Thank you, Your Honors. Thank you. Thank you, counsel. Interesting case, and we appreciate the argument. The case is submitted and will stand in adjournment for the day, or recess. Thank you.
judges: Fletcher B. , Fisher, Gould